***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into through the Pre-trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff sustained injuries from an accident occurring on August 10, 2007. The extent of Plaintiff's injuries is to be determined by the Industrial Commission.
5. An employment relationship existed between Plaintiff and Defendant-Employer during all relevant times.
6. Plaintiff's average weekly wage in this claim is $568.06, which yields a compensation rate of $378.73.
7. Defendants have paid Plaintiff temporary total disability compensation from her date of injury to the present.
 *********** ISSUES
The issues to be determined are as follows:
1. Whether Plaintiff is entitled to have Defendants pay for her right shoulder surgery?
2. Whether Plaintiff's current cervical condition and myofascial syndrome are causally related to her work accident?
3. To what further medical treatment, if any, is Plaintiff entitled?
 *********** *Page 3 EXHIBITS
The following documents were accepted into evidence as stipulated exhibits before the Deputy Commissioner:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Plaintiff's medical records
 • Exhibit 3: Industrial Commission forms
 • Exhibit 4: Plaintiff's federal income tax returns for 2006 and 2007
 • Exhibit 5: Defendants' discovery responses
 • Exhibit 6: Indemnity payments history
 • Plaintiff's Exhibit 1: Medical bills
 • Plaintiff's Exhibit 2: Seven photographs of embankment
 • Plaintiff's Exhibit 3: 13 photographs of injuries
 *********** ORDER
Plaintiff's Motion to Reconsider the March 18, 2011 Order of the Special Deputy Commissioner is granted. Defendants are ordered to timely pay Plaintiff's transportation costs related to medical treatment for her work injury. Defendants shall pay a 10% penalty on the late payment of the two transportation reimbursement requests addressed in Plaintiff's motion and Defendants' response.
 ***********
Based upon a preponderance of the evidence from the entire record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. At the time of the hearing before the Deputy Commissioner Plaintiff was 47 years old. Plaintiff worked for Defendant-Employer as a bank teller at a branch in Durham.
2. On Friday, August 10, 2007, at about 5:55 p.m., a bank robber entered the branch in which Plaintiff worked wearing dark glasses and a baseball cap. At the time, Plaintiff and another teller were present.
3. The robber possessed a gun and pointed it at Plaintiff and directed her to give him all the money in her drawer or he would shoot her. Plaintiff complied with the demands. The robber then ordered Plaintiff and her co-worker to hold their hands up and walk to the vault, holding the gun at Plaintiff's back as they walked. Plaintiff's co-worker was ordered to unlock the vault and they were both ordered to walk into the vault. The robber then went into the vault and began loading the money. He directed Plaintiff and her co-worker to back up. When they backed out of the vault, Plaintiff's co-worker escaped through the back without the robber noticing her absence. A customer came to the drive-up window and Plaintiff was given permission to go and assist the customer. The robber said, "I have one more thing for you ladies." At that point Plaintiff thought the robber was going to kill her so she ran out the back door. As she was running at full speed, Plaintiff encountered a ten-foot embankment which she started down at a 60 degree angle. She fell forward landing forcefully on the concrete pavement at the bottom of the embankment onto her knees and out-stretched arms and hands. After Plaintiff got up and continued to run, she reunited with her co-worker and they ran into another office building and hid. While inside, they saw the bank robber who was driving by slowly and appeared to be looking for them. Eventually, Plaintiff and her co-worker found someone in the office building who dialed 911. Within five or 10 minutes the police and an ambulance were on the scene. *Page 5 
4. At the emergency room on August 10, 2007, shortly after the incident, Plaintiff complained of pain in her right shoulder, right arm, right elbow, right forearm, right wrist, right knee, right foot, left hand and left great toe. X-rays were taken on August 10, 2007 of Plaintiff's right shoulder, right wrist, right knee, right forearm and left hand, all of which were read as negative. The physical examination revealed abrasions to the right foot, right knee, left great toe and the palms of both hands, tenderness in the right shoulder and wrist, and no tenderness and full range of motion in the neck. Plaintiff denied any neck pain at that time.
5. On August 13, 2007, Plaintiff sought treatment at Hillsborough Family Practice with Dr. Sarah Ringel. Plaintiff complained of pain in her right forearm, left hand and wrist, bruising on her right arm, bruising and swelling in her left great toe, and pain and swelling in her right foot. Plaintiff reported she was not able to rotate her right forearm without pain and that she now had a bruise on her right upper arm. She also reported that she was having nightmares and difficulty sleeping. Plaintiff did not complain of any neck pain at that time and on examination her neck was non-tender. Dr. Ringel diagnosed Plaintiff with multiple contusions and abrasions and emotional stress from the traumatic event. Dr. Ringel made Plaintiff referrals for orthopedic and psychiatric treatment.
6. On August 15, 2007, Plaintiff presented to Triangle Orthopaedic Associates. She reported that her left great toe, right knee, both wrists, and her right elbow bothered her the most. She was assessed as having "turf toe" of her left great toe, a right knee abrasion, bilateral wrist sprains and a contusion to her right elbow. Plaintiff continued to receive treatment at Triangle Orthopaedic Associates, including physical and rehabilitation therapy through November 29, 2007. *Page 6 
7. In a September 20, 2007 medical note Dr. Jeffrey Murray from Triangle Orthopaedic Associates noted that Plaintiff complained of pain in multiple joints since her fall, "including her wrist bilaterally, her elbows, shoulders, hips, knees, ankles, feet, as well as her back, including lumbar cervical spine area." This note appears to be the first medical documentation of cervical and lumbar spine complaints.
8. Plaintiff was referred to a psychiatrist on August 13, 2007 by Hillsborough Family Practice due to symptoms of "emotional stress from traumatic event." Plaintiff was subsequently diagnosed with post-traumatic stress disorder (PTSD) related to the August 10, 2007 incident. Defendants have provided Plaintiff with psychotherapy from Ms. Ginger Edwards, a licensed professional counselor, from August 16, 2007 to the present. Defendants have also provided Plaintiff with psychiatric treatment from Dr. David Naftolowitz, a psychiatrist, from August 28, 2007 to the present. The treatment has assisted Plaintiff with coping with her PTSD, but the providers have indicated that Plaintiff needs continuing mental health treatment for her PTSD. Plaintiff's continuing PTSD symptoms affect her ability to function in society and have impacted her wage-earning capacity.
9. Defendants filed a Form 63 on August 21, 2007, accepting the injury on August 10, 2007 as compensable, without prejudice. The Form 63 did not specify which body part(s) were being accepted. Thereafter, Defendants did not contest the compensability of this claim within 90 days.
10. Defendants have not appealed from the decision of the Deputy Commissioner finding that as a result of her work related injury by accident on August 10, 2007, Plaintiff suffered compensable injuries to her right shoulder, right elbow, both hands and wrists, both knees, right foot, and left great toe. Defendants have also not appealed from the decision of the *Page 7 
Deputy Commissioner that as a direct result of her work injury Plaintiff developed PTSD, or the award of continuing temporary total disability compensation to Plaintiff.
11. Defendants have denied that Plaintiff's right shoulder surgery, myofascial syndrome and her cervical and lumbar conditions are related to her compensable work injury and the Deputy Commissioner ruled in Defendants' favor on these issues.
12. On October 3, 2007, Plaintiff underwent a right shoulder MRI, which was read to show mild subacromial-subdeltoid bursitis and subcoracoid bursitis, a proximal humeral lesion, and some mild biceps tendinopathy, but no rotator cuff tear.
13. On November 27, 2007, Plaintiff began treating with Dr. Theodore Pitts, an orthopedic surgeon, upon the referral of Defendants. Dr. Pitts' medical note dated November 27, 2007 indicates that Plaintiff had already had an MRI of her right wrist, right elbow, right shoulder and lumbar spine. He summarized these MRI results in his medical note. Plaintiff reported ongoing symptoms over the right side of her neck, stiffness in her neck and tingling in her right hand. Dr. Pitts assessed Plaintiff as having a healing right radial head fracture, right wrist problems, possible posttraumatic carpal tunnel syndrome of the right wrist and "cervical sprain and strain status post fall."
14. On December 20, 2007, Dr. Pitts assessed Plaintiff as having right C3, C4 and C5 radiculopathy, right cubital tunnel syndrome, right and left carpal tunnel syndrome, right knee pain and left great toe pain.
15. On February 6, 2008, Plaintiff underwent right-sided Guyon canal and carpal tunnel releases performed by Dr. Pitts. On April 4, 2008, Dr. Pitts performed the same procedures on the left side. These conditions were related to her compensable injury. *Page 8 
16. At Plaintiff's medical visit on September 19, 2008 with Dr. Pitts, she reported that she hurt all over her body. She recalled having seen a rheumatologist about 15 years prior. Dr. Pitts noted that Plaintiff appeared to have some type of overall inflammatory condition, possibly fibromyalgia. On October 2, 2008, Plaintiff underwent a cervical MRI, which was read to show a mild bulging disc at C5-6 with mild narrowing of the neural foramina.
17. In October 2008 Plaintiff had a fall resulting in injury to her right ankle. In December 2008 Plaintiff sustained another fall resulting in injury to her right ankle and right lower leg. These falls were not related to any work related conditions.
18. On December 8, 2008, Plaintiff underwent a right shoulder MRI, which was read to show a fairly large focal lesion within the proximal humerus, osteophytes over the AC joint, and a partial tear of the supraspinatus tendon. Dr. Pitts opined that Plaintiff's preexisting arthritis was aggravated by her work incident and injury, which in part led to her need for surgery. Dr. Pitts noted in his medical records that it is difficult to separate out how much pain was from the rotator cuff tear, how much was from aggravation of the pre-existing arthritis and how much was from aggravation of a preexisting tumor. Plaintiff began reporting shoulder pain from the day of the work related accident and has had continuous pain since her work injury.
19. On January 14, 2009, Plaintiff underwent surgery on her right shoulder with Dr. Pitts. During the procedure, Dr. Pitts excised a benign tumor at the proximal humerus, repaired the rotator cuff and did an acromioplasty, a distal clavicle resection, a subacromial bursectomy, release of the coracoacromial ligament, and a bone graft. Dr. Pitts indicated that the benign tumor he removed was not related to Plaintiff's injury from the August 10, 2007 incident, but that the surgery was reasonable and necessary in relation to Plaintiff's injury. *Page 9 
20. After Plaintiff's surgery, Dr. Pitts continued to treat her for shoulder symptoms and other conditions related to her compensable injury. On November 5, 2009, Dr. Pitts diagnosed Plaintiff with medial humeral epicondylitis in her right elbow and administered a steroid injection to address her complaint of right elbow pain.
21. A December 22, 2009 MRI of Plaintiff's right knee was read to show low-grade chondromalacia of the patella.
22. Dr. Pitts closed his medical practice in March 2010, but as of the date of his deposition on June 22, 2010, he was intending to return to practice in another location. He last saw Plaintiff on February 26, 2010. At that time, he recommended that Plaintiff continue to receive orthopedic care and that she begin pain management. Dr. Pitts opined that Plaintiff needed to continue medical treatment at that time because of her injuries as she was not at maximum medical improvement. Defendants have not authorized the referrals from Dr. Pitts.
23. On May 25, 2010, Plaintiff saw Dr. Szura, another orthopedic surgeon, for an independent medical examination ordered by Defendants. Plaintiff reported "fairly global complaints of pain," including pain in her neck, right shoulder, right elbow, both wrists and hands, low back, hips, knees and left great toe. Plaintiff also reported to Dr. Szura that her "right arm was jammed up into her neck when she fell."
24. Dr. Szura opined, based primarily on his reading of prior medical records, that Plaintiff sustained injuries in the August 10, 2007 work related fall to multiple body parts identified in the medical records and which are listed herein as compensable in Finding of Fact Number 10. Dr. Szura acknowledged that his opinions on what conditions were related to Plaintiff's injury were primarily based upon timing, which the Full Commission finds to be referring to a temporal relationship between the onset of symptoms and the injury. He testified: *Page 10 
 In — in a fall like that you could have injury to any number of joints in your body, or muscles, or tendons in — in the body. When I review the medical records I looked for evidence within a timely fashion of complaints of pain in those joints so that from a causation standpoint I can say, "Well, that makes sense." If it occurred within forty-eight hours, you know, that's — that's reasonably associated. But if the complaints of pain extend beyond several days, it's more difficult to draw a direct causal relationship between the fall and the pain.
25. Dr. Szura opined that there was no significant evidence in the early medical records to suggest that Plaintiff sustained any significant cervical injury in the August 10, 2007 incident. He noted that the electrodiagnostic studies did suggest some nerve root irritation from C3-C5, but the clinical findings did not correlate with these results. He further noted that the disc bulges at C5, C6 were not related to the work injury or Plaintiff's current complaints of right sided discomfort, but were incidental findings common in the general population. Dr. Szura was aware that Plaintiff's first documented complaint of cervical pain was on September 20, 2007, since he read the medical records. Dr. Szura was of the opinion that the findings from the October 2, 2008 cervical MRI were degenerative in nature and were likely not caused or aggravated by the incident.
26. Based upon the mechanism of injury and his review of the medical records, Dr. Szura also opined that Plaintiff likely sustained a right rotator cuff contusion and secondary bursitis from the August 10, 2007 fall. However, Dr. Szura believed that Plaintiff's right shoulder injury had resolved. He opined that Plaintiff's continuing right shoulder symptoms were more likely related to the January 2009 surgery than the incident. He was of the opinion that Plaintiff's shoulder surgery was not "substantially related to the original work injury."
27. Dr. Szura also felt that there could be some contribution to Plaintiff's myofascial syndrome from the trauma from the fall, but Plaintiff's pain was multi-factorial. He opined that *Page 11 
Plaintiff's current symptoms are more related to her general myofascial condition and that Plaintiff is at maximum medical improvement (MMI) for her August 10, 2007 injuries from an orthopedic standpoint.
28. The Full Commission finds Plaintiff has failed to prove that she sustained a cervical injury, or that her pre-existing cervical condition was aggravated as a result of her compensable fall. Although Dr. Pitts testified that Plaintiff's cervical condition was aggravated by her fall, he then testified that he would have expected Plaintiff to have experienced neck pain within a day or two if she sustained such an aggravation. Dr. Szura's opinion that Plaintiff did not sustain injury to her cervical spine as a result of her fall was based upon similar reasoning based upon the timing of the Plaintiff's report of symptoms. The Full Commission gives greater weight to the opinion of Dr. Szura on this issue. Plaintiff has also presented insufficient evidence to prove that any lumbar problems she may have experienced are related to her work injury.
29. Defendants did not appeal from the Deputy Commissioner's determination that Plaintiff sustained a compensable injury to her right shoulder. With respect to whether Plaintiff's shoulder surgery was related to her compensable fall, however, the issue to be determined is whether the right shoulder surgery was reasonably required to effect a cure or provide relief from Plaintiff's compensable injury.
30. Plaintiff's right shoulder surgery was performed by Dr. Pitts, her authorized treating physician. Dr. Pitts initially opined that Plaintiff's need for shoulder surgery was partly due to reasons directly related to her injury and partly due to an unrelated tumor. He also opined that he would have performed the shoulder surgery for the tumor alone, but he would have also performed the surgery just as quickly if Plaintiff had the same symptoms directly related to her *Page 12 
injury, without the tumor. Dr. Szura opined that Plaintiff likely sustained a right rotator cuff contusion and subsequent bursitis from the August 10, 2007 fall.
31. When presented on cross examination with documentation that the rotator cuff tear, which was one of the reasons Dr. Pitts had for proceeding with surgery, did not appear on the October 2007 MRI, Dr. Pitts then agreed that the surgery was not related to Plaintiff's August 10, 2007 work injury. However, at the time he made the decision to proceed with surgery up until the time of his deposition, Dr. Pitts testified that he was of the opinion that the shoulder surgery was reasonable and necessary as a result of Plaintiff's injuries. Dr. Pitts also testified that it is possible there was a tear in the first MRI, but the radiologist missed it, which happens 25% of the time when the lesion is a slight one. Dr. Pitts also noted that small tears can be missed, unlike the big ones.
32. The Full Commission finds that the shoulder surgery performed by Dr. Pitts was not reasonably required to effect a cure or provide relief from Plaintiff's compensable injury. The medical notes of Dr. Pitts and his testimony are insufficient to show that shoulder surgery was reasonably required as a result of Plaintiff's compensable injury.
33. With regard to the diagnosis of epicondylitis, Dr. Pitts could not say whether Plaintiff's work related injury caused or aggravated this condition. Dr. Szura testified that if Plaintiff's right elbow condition is epicondylitis, it is not related to the August 10, 2007 incident. The Full Commission finds that Plaintiff failed to prove that her compensable fall caused or aggravated her epicondylitis, if she has this condition. The Full Commission finds, however, based upon the testimony of Dr. Pitts and Plaintiff that Plaintiff has some continuing complaints of elbow pain as a result of her compensable elbow injury for which she needs continuing medical treatment. *Page 13 
34. With regard to whether Plaintiff's work injury aggravated her fibromyalgia or myofascial syndrome, Dr. Szura felt that there could be some contribution to Plaintiff's myofascial syndrome from the trauma from the fall. Dr. Pitts felt that Plaintiff may have had osteoarthritis and fibromyalgia before the August 10, 2007 incident and that, "one way that I'm thinking about this is that her injuries aggravated her (fibromyalgia)." He ultimately opined that the injuries Plaintiff sustained in the August 10, 2007 incident aggravated her fibromyalgia. Dr. Pitts indicated that the temporal relationship between the incident and Plaintiff's pain complaints were only part of the basis for his opinion. The Full Commission finds that the trauma from Plaintiff's fall aggravated her myofascial syndrome, or fibromyalgia, and that she would benefit from continuing medical treatment of her resulting condition.
35. Dr. Szura recommended that Plaintiff be referred to a physiatrist for ongoing treatment of her myofascial pain condition, but he would not recommend any further orthopedic treatment. Dr. Szura also noted that Plaintiff should continue to treat for her PTSD, but she is at maximum medical improvement from her orthopedic injuries. He recommended that she undergo a functional capacity evaluation (FCE) to ascertain what her work abilities, if any, may be.
36. The Full Commission finds that further medical treatment is required for Plaintiff's compensable PTSD, which continues to be disabling, her myofascial pain syndrome, including evaluation and treatment by a physiatrist and for her continuing right elbow, as well as her other compensable conditions.
37. As a result of her compensable PTSD, Plaintiff is currently incapable of working in any employment.
 *********** *Page 14 
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. It is undisputed that as a result of her work related injury by accident on August 10, 2007, Plaintiff suffered compensable injuries to her right shoulder, right elbow, both hands and wrists, both knees, right foot, and left great toe. Plaintiff also suffered the onset of compensable PTSD as a direct result of the incident, which is also undisputed. N.C. Gen. Stat. § 97-2(6).
2. As a result of her work related PTSD, Plaintiff is incapable of earning wages in any employment and is entitled to continuing temporary total disability compensation benefits. N.C. Gen. Stat. § 97-29.
3. Because this claim was accepted on a Form 63 that did not specify any body part(s), Plaintiff is not entitled to a rebuttable presumption that further medical treatment is related to her August 10, 2007 injuries. Gross v. Gene BennettCo., ___ N.C. App. ___ (January 18, 2011).
4. By a preponderance of the evidence of record, Plaintiff has shown that her myofascial syndrome was aggravated by the August 10, 2007 work injury, and, as such, she is entitled to medical compensation related to her myofascial syndrome. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Plaintiff has not shown that her cervical and lumbar conditions were caused and/or aggravated by the August 10, 2007 incident, and, as such, she is not entitled to compensation related to her these conditions. N.C. Gen. Stat. § 97-2(6).
6. Plaintiff has not shown that her need for shoulder surgery was related to her compensable shoulder injury. N.C. Gen. Stat. §§ 97-2(19) and 97-25. *Page 15 
7. Plaintiff has shown that, although she has reached MMI from her orthopedic injuries, further medical treatment for her compensable physical injuries is reasonably required to effect a cure, provide relief and/or lessen the period of her disability. Id.
8. Plaintiff is entitled to payment of medical expenses incurred as a result of the compensable injury by accident as may have reasonably been required, or may be required in the future to effect a cure, provide relief, or lessen the period of Plaintiff's disability, including evaluation and treatment for her myofascial pain syndrome and further treatment for her elbow or any other compensable condition. Id.
9. Plaintiff is entitled to have Defendants continue to authorize and pay for treatment for her compensable PTSD. Id.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Defendants shall continue to pay weekly temporary total disability compensation to Plaintiff in the amount of $378.73 per week until Plaintiff returns to work or further Order of the Industrial Commission.
2. Plaintiff's claim for payment for the January 14, 2009 right shoulder surgery is denied.
3. Defendants shall pay for all past and future medical treatment for all of Plaintiff's compensable conditions which has been, or may be reasonably required to effect a cure, provide relief, or lessen the period of Plaintiff's disability, according to procedures approved by the Commission, including past treatment by Dr. Pitts (except the shoulder surgery), a referral to a *Page 16 
physiatrist for evaluation and treatment for her myofascial pain syndrome and further treatment for work related elbow problems, or any other compensable condition.
4. Ms. Edwards and Dr. Naftolowitz are hereby designated as Plaintiff's treating providers for her compensable PTSD, and Defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, continue to authorize and pay for the treatment that they recommend for said condition.
5. Defendants shall pay the costs.
This the __ day of September, 2011.
 S/_____________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________________________ PAMELA T. YOUNG CHAIR
 S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1